UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

MELTECH, INC.,

               Plaintiff,

      -v-

IAC/INTERACTIVECORP, MATCH.COM,
LLC, PEOPLE MEDIA, LLC, AND HUMOR
RAINBOW, INC.,

              Defendants.
_____

Case No. 13-CV-8351(JMF)

*Document Filed Electronically*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 634-3095
Facsimile: (212) 655-1768

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ......................................................................................1

PLAINTIFF'S ALLEGATIONS ....................................................................................3

ARGUMENT ..................................................................................................................5

A.    The Relevant Standard ....................................................................................5

B.    Plaintiff's Failure to State a Copyright Claim Warrants Dismissal of the TAC................6

C.    Plaintiff's Lanham Act Claim Should Be Dismissed ........................................8

       1.    The Claim Is Barred by *Dastar*................................................................8

       2.    Plaintiff Lacks Standing to Bring a False Advertising Claim...............................10

       3.    Plaintiff Fails to State a False Advertising Claim Because the TAC Does Not Identify a Single (1) Commercial Advertisement or Promotion Containing, or (2) Representation Concerning, Plaintiff's Photographs ..............13

D.    Plaintiff's RICO Claim Should Be Dismissed for Multiple Independent Reasons ..........15

       1.    Plaintiff Fails to State a Claim under 18 U.S.C. § 1962(c)....................................15

       3.    Plaintiff Fails to State a Claim under 18 U.S.C. § 1962(d) ..................................18

E.    Plaintiff's State Law Claims Are Barred By the Communications Decency Act.............19

       1.    Section 230 of the CDA.......................................................................19

       2.    Section 230 of the CDA Requires Dismissal of Plaintiff's State Law Claims ......20

              a.    Defendants Are Interactive Computer Service Providers........................20

              b.    Defendants Are Not Information Content Providers and  Did Not Provide the Content at Issue ................................................21

F.    Plaintiff's State Law Claims Are Preempted by the Copyright Act .................................23

G.    Plaintiff Also Fails to Allege Required Elements of Its State Law Claims.......................23

       1.    Plaintiff Fails to State a Claim for Aiding and Abetting Fraud ............................23

       2.    Plaintiff's New York Civil Rights Law Claim Fails as a Matter of Law .............24

3.      Plaintiff's Cause of Action for Unjust Enrichment Fails as a Matter of Law........24

4.      Plaintiff's Cause of Action for Conversion Fails as a Matter of Law ..................25

CONCLUSION..............................................................................................................26

TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Agence France Presse v. Morel*
    769 F. Supp. 2d 295 (S.D.N.Y. 2011)..................................................................9

*Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*
    467 F. Supp. 2d 394 (S.D.N.Y. 2006)................................................................10

*Anza v. Ideal Steel Supply Corp.*
    547 U.S. 451 (2006).........................................................................................18

*Arista Records, LLC v. Doe 3*
    604 F.3d 110, 117-18 (2d Cir. 2010) .................................................................7

*Ascentive, LLC v. Opinion Corp.*
    842 F. Supp. 2d 450 (E.D.N.Y. 2011) .............................................................20

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)...........................................................................................5

*Atl. Recording Corp. v. Project Playlist, Inc.*
    603 F. Supp. 2d 690 (S.D.N.Y. 2009)..............................................................19

*Atrium Grp. de Ediciones y Publicaciones, S.L. v. Harry N. Abrams, Inc.*
    565 F. Supp. 2d 505 (S.D.N.Y. 2008)................................................................9

*Beckman v. Match.com*
    No. 2:13–CV–97, 2013 WL 2355512 (D. Nev. May 29, 2013) ................20, 21, 23

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)...........................................................................................5

*Bi-Rite Enters. v. Button Master*
    555 F. Supp. 1188 (S.D.N.Y. 1983)....................................................................5

*Bill Diodato Photography, LLC v. Kate Spade, LLC*
    388 F. Supp. 2d 382 (S.D.N.Y. 2005)................................................................9

*Biofeedtrac Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*
    832 F. Supp. 585 (E.D.N.Y. 1993) ..................................................................17

*Blank Prods., Inc. v. Warner/Chappell Music, Inc.*
    No. 11-CV-7927, 2013 WL 32806 (S.D.N.Y. Jan. 3, 2013) ..............................7

*Boyle v. United States*
556 U.S. 938 (2009) ...................................................................15

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*
373 F.3d 296 (2d Cir. 2004)......................................................23

*Carafano v. Metrosplash.com, Inc.*
339 F.3d 1119 (9th Cir. 2003) ......................................20, 21, 22

*Castaldi v. 39 Winfield Assocs.*
30 A.D.3d 458 (2d Dep't 2006)..................................................25

*Cedric Kushner Promotions, Ltd. v. King*
533 U.S. 158 (2001)...................................................................15

*Conte v. Newsday, Inc.*
No. 06–CV–4859, 2013 WL 978711 (E.D.N.Y. Mar. 13, 2013) ...........12

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.*
546 F. Supp. 2d 120, 129 (S.D.N.Y. 2008)................................9

*Dastar Corp. v. Twentieth Century Fox Film Corp.*
539 U.S. 23 (2003)............................................8, 9, 10, 13

*DeFalco v. Bernas*
244 F.3d 286 (2d Cir. 2001)...............................................15, 17

*Denenberg v. Rosen*
897 N.Y.S.2d 391 (1st Dep't 2010) ...........................................25

*Discon, Inc. v NYNEX Corp.*
93 F.3d 1055 (2d Cir. 1996).......................................................16

*DiVittorio v. Equidyne Extractive Indus., Inc.*
822 F.2d 1242 (2d Cir. 1987)......................................................17

*Doe v. Friendfinder Network, Inc.*
540 F. Supp. 2d 288 (D.N.H. 2008)...........................................13

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,*
314 F.3d 48 (2d Cir. 2002).........................................................14

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*
314 F.3d 48 (2d Cir. 2002).........................................................13

*FD Prop. Holding, Inc. v. U.S. Traffic Corp.*
206 F. Supp. 2d 362 (E.D.N.Y. 2002) ...................................18, 19

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*
   499 U.S. 340 (1991)...................................................................................6

*First Capital Asset Management. Inc. v. Satinwood, Inc.*
   385 F.3d 159 (2d Cir. 2004)........................................................................16

*First Nationwide Bank v. Gelt Funding Corp.*
   27 F.3d 763 (2d Cir. 1994).....................................................................12, 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*
   352 F. Supp. 2d 429 (S.D.N.Y. 2005).............................................................22

*Frazier v. Turning Stone Casino*
   254 F. Supp. 2d 295 (N.D.N.Y. 2003)............................................................24

*Fuji Photo,*
   640 F. Supp. 2d at 312.............................................................................19

*Gibson v. Craigslist, Inc.*
   No. 08-CIV-7735, 2009 WL 1704355 (S.D.N.Y. June 15, 2009) ...........................21

*Gifford v. U.S. Green Bldg. Council*
   No. 10-cv-7747, 2011 WL 4343815 (S.D.N.Y. Aug. 16, 2011)..............................12

*Gmurzynska v. Hutton*
   355 F.3d 206 (2d Cir. 2004)...................................................................13, 14

*Gordon v. McGinley*
   502 F. App'x 89 (2d Cir. 2012) ...................................................................23

*Green v. America Online*
   318 F.3d 465 (3d. Cir. 2003).......................................................................22

*Hamilton Assets Corp. v. Kirshberg*
   158 N.Y.S.2d 808 (1st Dep't 1956) ...............................................................25

*Hemi Grp., LLC v. City of New York*
   559 U.S. 1 (2010)....................................................................................18

*Holmes v. Grubman*
   568 F.3d 329 (2d Cir. 2009)..........................................................................5

*Hudson v. Universal Studios, Inc.*
   No. 04 Civ. 6997, 2008 WL 4701488 (S.D.N.Y. Oct. 28, 2008) ............................9

*Island Software & Computer Serv. Inc. v. Microsoft Corp.*
   413 F.3d 257 (2d Cir. 2005).......................................................................6, 7

*Johnson v. Gumer*
　　94 A.D.2d 955 (4th Dep't 1983) ...............................................................25

*Jones v. Nat'l Commc'n & Surveillance Networks*
　　409 F. Supp. 2d 456 (S.D.N.Y. 2006) ......................................................16

*K-Beech, Inc. v. Does 1-29*
　　No. CV 11–3331, 2011 WL 4401933 (E.D.N.Y. Sept. 19, 2011) ...........6

*Kelly v. L.L. Cool J.*
　　145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd,* 23 F.3d 398 (2d Cir. 1994) .........6

*LaChapelle v. Fenty*
　　812 F. Supp. 2d 434 (S.D.N.Y. 2011)..................................................9, 23

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
　　134 S. Ct. 1377 (2014).....................................................................10, 11

*Mandarin Trading Ltd. v. Wildenstein*
　　16 N.Y.3d 173 (2011) .................................................................24, 25

*Martes v. USLIFE Corp.*
　　927 F. Supp. 146 (S.D.N.Y. 1996) ........................................................25

*Martin v. Walt Disney Internet Grp*
　　. No. 09CV1601, 2010 WL 2634695 (S.D. Cal. June 30, 2010) ...............9

*Matthew Bender & Co. v. West Publ'g Co.*
　　158 F.3d 693 (2d Cir. 1998)......................................................................7

*Murawski v. Pataki*
　　514 F. Supp. 2d 577 (S.D.N.Y. 2007)...............................................19, 20

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*
　　299 F. App'x 509 (6th Cir. 2008)...............................................................9

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*
　　591 F.3d 250 (4th Cir. 2009) ..................................................................19

*Physicians Mut. Ins. Co. v. Greystone Servicing Corp.*
　　No. 07 Civ. 10490, 2009 WL 855648 (S.D.N.Y. Mar. 25, 2009) ...........16

*Pirone v. MacMillan Inc.*
　　894 F.2d 579 (2d Cir. 1990)....................................................................24

*Powers v. British Vita, P.L.C.*
　　57 F.3d 176 (2d Cir. 1995).......................................................................18

*Reed Elsevier, Inc. v. Muchnick*
  559 U.S. 154,157 (2010).......................................................................................6

*Reves v. Ernst & Young*
  507 U.S. 170 (1993)...........................................................................................17

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*
  30 F.3d 339 (2d Cir. 1994)................................................................................16

*Rogers v. Koons*
  960 F.3d 301 (2d Cir. 1992)..............................................................................23

*Sedima, S.P.R.L. v. Imrex Co.*
  473 U.S. 479, 496 (1985)..................................................................................15

*Seldon v. Magedson*
  No. 11 Civ. 6218 (PAC), 2012 WL 4475274 (S.D.N.Y. July 10, 2012)...............20

*Sperry* v. *Crompton Corp.*
  8 N.Y.3d 204 (2007)..........................................................................................25

*Spool v. World Child Intern. Adoption Agency*
  520 F.3d 178 (2d Cir. 2008)..............................................................................15

*U.S. Fire Ins. Co. v. United Limousine Serv.*
  303 F. Supp. 2d 432 (S.D.N.Y. 2004)................................................................17

*United States v. Persico*
  832 F.2d 705, 714 (2d Cir. 1987), *cert. denied,* 486 U.S. 1022 (1988)...................17

*Universal Commun. Sys., Inc. v. Lycos, Inc.*
  478 F.3d 413 (1st Cir. 2007).............................................................................22

*Wynn v. AC Rochester*
  273 F.3d 153 (2d Cir. 2001)..............................................................................24

*Zeran v. America Online, Inc.*
  129 F.3d 327 (4th Cir. 1997) .......................................................................19, 22

<u>Statutes</u>

15 U.S.C. § 1125(a) ............................................................................................9, 10

15 U.S.C. § 1125(a)(1)(A)...............................................................................8, 9, 13

15 U.S.C. § 1125(a)(1)(B) .......................................................................................8

17 U.S.C. § 102(a) .................................................................................................23

17 U.S.C. § 106(1), (3), (5) ................................................................................................23

17 U.S.C. § 301 ......................................................................................................................23

17 U.S.C. § 411(a) ..................................................................................................................6

18 U.S.C. § 1961(3) ..............................................................................................................15

18 U.S.C. § 1961(4) ..............................................................................................................15

18 U.S.C. § 1962 .............................................................................................................15, 17

18 U.S.C. § 1962(c) .................................................................................................15, 17, 18

18 U.S.C. § 1962(d) ......................................................................................................15, 18

18 U.S.C. § 1964(c) ..............................................................................................................17

47 U.S.C. § 230(c)(1) .....................................................................................................19, 20

47 U.S.C. § 230(f)(2) ............................................................................................................20

47 U.S.C. § 230(f)(3) ............................................................................................................21

Communications Decency Act § 230 ...............................................................2, 19, 20, 22

CPLR 215(3) ..........................................................................................................................24

Fed. R. Civ. P. 9(b) ..............................................................................................................24

Fed. R. Civ. P. 12(b)(6) .....................................................................................................1, 5

Fed. R. Civ. P. 12(e) ..............................................................................................................7

Fed. R. Civ. P. 11 ..................................................................................................................7

Fed. R. Civ. P. 11(b)(3) .........................................................................................................7

Fed. R. Civ. P. 8(a) ................................................................................................................6

Other Authorities

D. NIMMER, NIMMER ON COPYRIGHT, § 1.01[B][1][g] ...................................................23

New York Civil Rights Law §§ 50-51 ................................................................................24

Defendants IAC/InterActiveCorp, Match.com, LLC, People Media, LLC, and Humor

Rainbow, Inc. (collectively, "Match" or "Defendants") respectfully submit this memorandum of

law in support of their motion to dismiss the Third Amended Complaint, dated May 22, 2014 (the

"TAC")[1] of plaintiff MelTech, Inc. ("MelTech" or "Plaintiff") pursuant to Federal Rule of Civil

Procedure 12(b)(6).

## PRELIMINARY STATEMENT

MelTech alleges that it owns rights to photographs taken over eight years ago of "Melissa

Midwest," a pornographic online personality, which have allegedly been included in profiles posted

by other persons on Defendants' dating websites such as Match.com.  Based on these allegations,

MelTech asserts seven causes of action under various federal statutes and state common law.

The TAC is already the fourth pleading in this case; various named plaintiffs, class

allegations, and causes of action have come and gone.  We are left with only MelTech, which

obviously is not "Melissa Midwest" and no longer purports to represent her or her interests.  Rather,

MelTech is a company that claims to have acquired copyrights to a number of (unidentified)

photographs of Ms. Midwest.  MelTech's limited status is virtually unconnected to the broad claims

it asserts, which fundamentally are based on allegations concerning the person depicted in

MelTech's photographs, not the photographs themselves.  This disconnect is underscored by the

fact that the only actual harms alleged in the TAC are to subscribers of Defendants' dating websites

(which MelTech is not) or to Ms. Midwest herself.  Thus, MelTech simply lacks standing to pursue

its claims.

---

[1] MelTech states in the introduction to the TAC that it was filed in response to Defendants' motion to dismiss MelTech's Second Amended Complaint (the "SAC") (the "First Motion to Dismiss") [ECF # 22].  However, the relatively minor changes from the SAC to the TAC fail to overcome the numerous fatal deficiencies raised in the First Motion to Dismiss.  Accordingly, this motion is substantially similar to the First Motion to Dismiss, while specifically addressing those changes.

In any event, MelTech fails to state a copyright claim because it has not identified the alleged copyrighted materials at issue or the copyright registrations that are a prerequisite to filing a copyright infringement action.  MelTech's odd assertion that "this information [is] in a storage facility," TAC ¶ 76, fails to overcome this deficiency.  Because MelTech acknowledges that all of its claims are derived from its alleged copyrights, i.e., that "[t]his action arises out of the unauthorized use of Plaintiff's photographs on Defendants' web sites for commercial purposes," TAC ¶ 1, the Court should dismiss the TAC in its entirety for failure to identify the copyrighted materials and copyright registrations at issue.

MelTech fails to state a claim under the Lanham Act for at least three independent reasons, including that: (1) Supreme Court precedent expressly bars claims, such as MelTech's, which are mere copyright claims improperly "dressed up" as Lanham Act claims, (2) MelTech cannot and does not allege harm proximately caused by Match, barring any false advertising claim, and (3) MelTech has not identified a single specific advertisement or promotion containing any of Plaintiff's photographs, much less alleged why it is false or deceptive.

MelTech's purported claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") is frivolous, merely parroting the elements of a RICO claim without any supporting facts.  MelTech also fails to sufficiently plead: (1) a RICO enterprise, (2) a RICO enterprise distinct from any RICO person, (3) any specific wrongdoing by any Defendant, or (4) a specific harm proximately caused by an alleged RICO violation.

MelTech's state-law claims are barred by Section 230 of the Communications Decency Act of 1996 (the "CDA"), because MelTech seeks to hold Match liable on precisely the types of theories that are barred by the CDA, i.e.,  allegedly failing to screen and remove content posted by third-party users.  MelTech's state-law claims (other than for aiding and abetting fraud and under

the New York Civil Rights Law) are also preempted by the Copyright Act because they are explicitly based on the alleged "unauthorized use of Plaintiff's photographs."

MelTech's state-law causes of action should also be dismissed because MelTech has failed to plead necessary elements of those claims. Among other things, MelTech's aiding and abetting fraud, unjust enrichment, and conversion claims require the existence of at least some relationship between the plaintiff and the defendant. MelTech, however, never had any contact with any of the Defendants, let alone any relationship upon which to pursue a claim against them. Finally, MelTech's New York Civil Rights Law claim is frivolous, as that claim cannot be brought by a corporate entity such as Plaintiff, and is time-barred.

Accordingly, the Court should grant Defendants' motion to dismiss the TAC with prejudice.

## PLAINTIFF'S ALLEGATIONS

According to the TAC, Defendants "operate approximately 25 online dating/personals web sites," including Match.com. TAC ¶¶ 48-49. MelTech allegedly (*id.* ¶ 2):

> owns the rights to thousands of photographs of Melissa Harrington aka Melissa Midwest as well as the trade names Melissa Harrington and Melissa Midwest, and all other intellectual property associated with these trade names and associated web sites, as well as the publicity rights associated with them, including but not limited to www.MelissaMidwest.com (the individual formerly known as Melissa Midwest is NOT a party to this action).

MelTech asserts that all of its claims – whether under the Lanham Act, the RICO statute, the Copyright Act, or state law – are traceable to Defendants' unauthorized "use of Plaintiff's photographs in fake profiles" on Defendants' dating websites. *Id.* ¶ 4; *id.* ¶ 54 ("While Match's web sites presumably provide a legitimate forum to meet new people for dating, relationships, and marriage, the reality is that the majority of profiles and communications on these sites are fraudulent profiles and communications that incorporate Plaintiff's photographs and those of other non-

members.").  In this regard, MelTech alleges that subscribers to Defendants' websites falsely believed that Melissa Midwest "was and is a member of Defendants' sites."  *Id.* ¶ 20.

Based on the foregoing, MelTech alleges that Match has "engaged in reverse passing or palming off by using Plaintiff's photographs in their web site profiles and advertisements."  *Id.* ¶ 69. MelTech further alleges that Match "falsely designates the origin of Plaintiff's photographs and the individual depicted in them by designating false towns, cities, and states in the United States as their place of origin," *id.* ¶ 70, and "falsely attributes hometowns, religions, ethnicities, incomes, and other details to profiles featuring Plaintiff's photographs," *id.* ¶ 71.

MelTech alleges that the profiles at issue are created and posted by "criminals" engaged in "catfishing."  *id.* ¶ 55-56 (describing "catfishing" by "criminals in foreign countries"); *id.* ¶ 15 (describing "fake profiles on Defendants' sites featuring Plaintiff's photographs"); *id.* ¶ 18 (referring to "arrests of online romance gang members"); *id.* ¶ 99 (referring to Defendants' alleged "hosting third-party criminals profiles").  MelTech further alleges that "Plaintiff's photographs and those of other non-members are the reason most people join or re-subscribe to Match's dating sites," *id.* ¶ 14, and that "Match has failed to use reasonable care in the manual approval process of profiles that contain  Plaintiff's photographs."  *Id.* ¶ 59.

While MelTech now for the first time categorically alleges that the Match.com website contains "[f]ake profiles created by Match," TAC ¶¶ 7-8, not only does the TAC allege no facts to support this conclusory (and fanciful) allegation, but MelTech concedes that it has none – that it has no evidence of any instance in which Match created a fake profile, let alone a fake profile containing any of MelTech's photographs.  All that MelTech has is another unsupported (and vain) assertion – that "discovery will uncover" fake profiles that were created by Match.  TAC ¶ 8.

MelTech was never a user of Match's services and never joined any of its websites, but alleges that it was harmed because:

> The value of Plaintiff's company, including its photographs, trade names, and other intellectual property have been substantially diminished as a result of Defendants' conduct as Plaintiff's photographs have been associated with "dating scams" on the internet and in the public eye, turning a multi-million dollar celebrity brand into a notorious and infamous figure with little commercial value, requiring Plaintiff to spend the last five years in damage control rather than growing and developing his business. *Id.* ¶ 40.[2]

## ARGUMENT

### A.   The Relevant Standard

In the Rule 12(b)(6) context, the **factual** allegations in a complaint are accepted as true as well as all reasonable inferences drawn in favor of the plaintiff. *See, e.g., Holmes v. Grubman,* 568 F.3d 329, 335 (2d Cir. 2009). Nonetheless, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Accordingly, the plaintiff must allege sufficient **facts** to show "more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)*,* and a complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). A complaint "must be dismissed" if the plaintiff has not, with factual allegations, "nudged [its] claims across the line from conceivable to plausible." *Id.* at 570.

---

[2] MelTech alleges that it owns certain intellectual property associated with photographs of Melissa Midwest, various trade names and associated websites, "as well as the publicity rights associated with them." TAC ¶ 2. Notwithstanding this drafting attempt, photographs, trade names, and websites do not possess a right of publicity; only actual people do. MelTech does not claim to own Melissa Midwest's persona or right of publicity; nor could it as a matter of law. *See, e.g., Bi-Rite Enters. v. Button Master*, 555 F. Supp. 1188, 1198 (S.D.N.Y. 1983) (privacy claim dismissed because corporation could not assert an interest in the non-assignable privacy rights of its licensors).

**B.** **Plaintiff's Failure to State a Copyright Claim Warrants Dismissal of the TAC**

To state a claim for copyright infringement, a plaintiff must show "ownership of a valid copyright."[3]  Specifically, to satisfy Rule 8(a), a claim for copyright infringement "must allege: (1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts during what time the defendant infringed the copyright."[4]

Section 411 of the Copyright Act states that "no civil action for infringement . . . shall be instituted until preregistration or registration of the copyright claim has been made[.]"  17 U.S.C. § 411(a).  While this registration requirement "does not restrict a federal court's subject-matter jurisdiction," it is a "precondition to filing a claim."  *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154,157 (2010) ("Copyright Act . . . requires copyright holders to register their works before suing for copyright infringement"); *K-Beech, Inc. v. Does 1-29*, No. CV 11–3331, 2011 WL 4401933, at *1 (E.D.N.Y. Sept. 19, 2011) ("valid registration is an element of an infringement claim").

Defendants pointed out in the First Motion to Dismiss that the SAC had failed to identify the alleged copyrighted materials or copyright registrations at issue.  In response, MelTech no longer even alleges that its photographs are "copyrighted with the U.S. Office of Copyrights in Washington, D.C." (SAC ¶ 49) and instead now only alleges that "Plaintiff's attorney in Nebraska copyrighted these photographs approximately 8 — 10 years ago and maintains all of this information in a storage facility."  TAC ¶ 76.  Thus, despite MelTech's numerous opportunities to plead a copyright claim,[5] the TAC still fails to: (1) identify the specific works that are the subject

---

[3] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Island Software & Computer Serv. Inc. v. Microsoft Corp.,* 413 F.3d 257, 260 (2d Cir. 2005).

[4] *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd,* 23 F.3d 398 (2d Cir. 1994).

[5] At the March 31, 2014 conference before the Court, in response to Defendants' counsel's request for

of Plaintiff's copyright claim, or (2) allege which photographs that allegedly appeared in profiles

have been "copyrighted" by MelTech (regardless of what MelTech might mean by that term).[6]

In response to the judicially noticeable materials submitted with the First Motion to

Dismiss establishing that multiple searches of the U.S. Copyright Office registration records reveal

no registrations in the name of MelTech or its principal,[7] MelTech now alleges that "[r]egistration

occurred by mail (as opposed to electronically), which likely accounts for the reason

Defendants were unable to locate the copyrights in their electronic online searches."  TAC ¶ 77.

MelTech's response, however, ignores the fact that the U.S. Copyright Office's online catalog

includes registrations for all works dating from January 1, 1978.[8]

In sum, the failure to identify any of the works at issue or any of the requisite copyright

registrations mandates dismissal of MelTech's copyright claim.[9]  Indeed, MelTech's attempt to

---

any relevant copyright registration numbers, Plaintiff's counsel stated that he would contact MelTech's counsel in Nebraska to obtain that information.  No such information has been provided to Defendants' counsel or appears in the TAC.  Rule 11(b)(3) requires that Plaintiff's "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Accordingly, Defendants have served a letter on Plaintiff's counsel under Rule 11.

[6] That Plaintiff's allegations that photographs are "copyrighted" are so vague and ambiguous as to subject the TAC to a motion for a more definite statement under Fed. R. Civ. P. 12(e) is irrelevant given that "Plaintiff will not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." [ECF # 18].

[7] See Declarations of Tyler E. Baker, dated May 2, 2014 [ECF # 21 ] and June 12, 2014.  See also Island Software & Computer Serv. Inc. v. Microsoft Corp., 413 F.3d 257, 260 (2d Cir. 2005) (noting that court may take judicial notice of copyright registrations published in Copyright Office's registry).

[8] See http://www.copyright.gov/circs/circ23.pdf ("Registrations for all works dating from January 1, 1978, to the present are searchable in the online catalog, available at www.copyright.gov/records.").

[9] MelTech's failure to plead a claim for copyright infringement also dooms any conceivable claim of contributory infringement.  See Matthew Bender & Co. v. West Publ'g Co., 158 F.3d 693, 706 (2d Cir. 1998).  In any event, the TAC fails to state a claim for contributory copyright infringement, because nowhere in the TAC does MelTech allege facts showing that "a party with knowledge of the infringing activity induced, caused, or materially contributed to the infringing conduct of another."  Blank Prods., Inc. v. Warner/Chappell Music, Inc., No. 11-CV-7927, 2013 WL 32806, at *3 (S.D.N.Y. Jan. 3, 2013) (citing Arista Records, LLC v. Doe 3, 604 F.3d 110, 117-18 (2d Cir. 2010)).

save this claim with the new, even more vague allegations in the TAC only gives rise to the additional pleading defect that issuance of registrations by the Copyright Office has not been expressly alleged, notwithstanding the reference to mystery material in a "storage facility."

Finally, because, according to the TAC (¶ 1), "[t]his action arises out of the unauthorized use of Plaintiff's photographs on Defendants' web sites for commercial purposes," the Court should dismiss the entire TAC as derivative of the failed copyright claim.

## C.   <u>Plaintiff's Lanham Act Claim Should Be Dismissed</u>

MelTech's cause of action under "Section 43(a) of the Lanham Act" purports to be brought under 15 U.S.C. §§ 1125(a)(1)(A) and (a)(1)(B).  TAC ¶ 63.  However, the TAC's factual allegations do not differentiate between those two subsections.[10]  In any event, as explained below, MelTech fails to state either a false origin or affiliation claim under section 1125(a)(1)(A) or a false-advertising claim under section 1125(a)(1)(B).

### 1.   <u>The Claim Is Barred by *Dastar*</u>

MelTech alleges that Match "engaged in reverse passing or palming off by using Plaintiff's photographs in their web site profiles and advertisements, falsely designating that Melissa Midwest was and is a member of their web sites."  TAC ¶ 69.  In a reverse passing-off scenario, the defendant represents someone else's goods as his own, thereby misrepresenting their origin.  *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 28 n.1 (2003).

In *Dastar*, the Supreme Court addressed the applicability of 15 U.S.C. § 1125(a)(1)(A) to reverse passing-off claims in the context of creative works.  The Court noted that the Lanham Act

---

[10]MelTech's only allegation that conceivably attempts to state a claim under section 1125 (a)(1)(B) is that "Defendants have made false and misleading representations regarding the nature, characteristics, and quality of the Plaintiff's photographs in commercial advertising on the internet."  TAC ¶ 65. Therefore, Defendants treat that conclusory allegation as MelTech's claim under section 1125(a)(1)(B) and the remainder of MelTech's Lanham Act allegations as its claim under section 1125(a)(1)(A).

was "not designed to protect originality or creativity," which is the province of copyright.  539 U.S. at

33-34 ("[I]n construing the Lanham Act, we have been careful to caution against the misuse or over-

extension of trademark and related protections into areas traditionally occupied by patent or

copyright.") (quotation marks and citation omitted).  The Court held that where the good in question

is "a communicative product . . . such as a book or . . . a video," the term "origin" in 15 U.S.C. §

1125(a)(1)(A) refers to "the producer of the tangible goods that are offered for sale, and not to the

author of any idea, concept, or communication embodied in those goods."  *Id.* at 33.[11]

As a result, "[s]ince *Dastar,* Lanham Act claims arising from the alleged copying of

creative work have been 'clearly foreclosed.'"  *LaChapelle v. Fenty,* 812 F. Supp. 2d 434, 438,

n.60 (S.D.N.Y. 2011) (citing *Hudson v. Universal Studios, Inc.,* No. 04 Civ. 6997, 2008 WL

4701488, at *8 (S.D.N.Y. Oct. 28, 2008) (quoting *Contractual Obligation Prods., LLC v. AMC

Networks, Inc.,* 546 F. Supp. 2d 120, 129 (S.D.N.Y. 2008)).  *See also Agence France Presse v.

Morel,* 769 F. Supp. 2d 295, 308 (S.D.N.Y. 2011) ("Morel holds copyrights for his photographs,

and his recourse for unauthorized copying, whether through a false claim of authorship or a false

assertion of license, lies in copyright law, not in trademark."); *Bill Diodato Photography, LLC v.

Kate Spade, LLC,* 388 F. Supp. 2d 382, 395 (S.D.N.Y. 2005) (holding that passing off a

photograph substantially similar to plaintiff's "is not a viable Lanham Act claim"); *Atrium Grp. de

Ediciones y Publicaciones, S.L. v. Harry N. Abrams, Inc.,* 565 F. Supp. 2d 505, 511 (S.D.N.Y.

---

[11] *See, e.g., Martin v. Walt Disney Internet Grp.*, No. 09CV1601, 2010 WL 2634695, at *8 (S.D. Cal. June 30, 2010) ("Under *Dastar*, the 'good' at issue in this case is the June 2008 issue of Competitor Magazine, since the magazine itself is the product offered for sale to the public.  Plaintiff's photograph constitutes the 'idea[s], concept[s], or communication[s] embodied within those goods,' which according to *Dastar*, are clearly not protected under Section 1125(a)."); *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 F. App'x 509, 511 (6th Cir. 2008) ("[T]aking tangible goods and reselling them as your own constitutes a Lanham Act violation; taking the intellectual property contained in those goods and incorporating it into your own goods does not.").

2008) (dismissing claim that  was "no more than a claim of copyright infringement dressed up in the guise of the Lanham Act"); *Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC,* 467 F. Supp. 2d 394, 399 (S.D.N.Y. 2006) (dismissing Lanham Act affiliation claim under *Dastar*).

MelTech's Lanham Act claim is based on the alleged use of its allegedly copyrighted photographs in fake dating profiles on Match's websites, which purportedly led subscribers to believe that Melissa Midwest "was and is a member" of those websites.  TAC ¶ 11.  Whether this theory of liability is characterized as a false designation of the "origin" of the dating profiles, or as a misrepresentation of Melissa Midwest's "affiliation" with Match's websites, it cannot support a Lanham Act claim because it depends upon an alleged exploitation of creative works – photographs of Melissa Midwest or, more accurately, the likenesses of Ms. Midwest embodied in those photographs – and thus is foreclosed by *Dastar*.

### 2.    Plaintiff Lacks Standing to Bring a False Advertising Claim

To the extent that the TAC purports to assert a false-advertising claim under § 43(a)(1)(B) of the Lanham Act, MelTech lacks standing to assert it.  In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014), the Supreme Court held that "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."  *See id.* at 1390 (stating that Lanham Act standing is "limited to plaintiffs whose injuries are proximately caused by violations of the statute").  "The relevant question is  . . . whether the plaintiff's interest is . . . one the Lanham Act protects; and  . . . whether the harm alleged is proximately tied to the defendant's conduct."  *Id.* at 1393. Therefore, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury *flowing directly from the deception wrought by the defendant's advertising*; and that that occurs when

deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1390 (emphasis added).

Here, according to the TAC, the injury "flowing directly from the deception [allegedly] wrought by the defendant's advertising" is that members of Defendants' dating websites were allegedly led to believe that Melissa Midwest "was and is a member of Defendants' web sites." TAC ¶ 11; *id.* ¶ 69 (same); *id.* ¶ 14 ("Plaintiff's photographs and those of other non-members are the reason most people join or re-subscribe to Match's dating sites . . ."). By contrast, MelTech alleges that it was harmed because:

> The value of Plaintiff's company, including its photographs, trade names, and other intellectual property have been substantially diminished as a result of Defendants' conduct as Plaintiff's photographs have been associated with "dating scams" on the internet and in the public eye, turning a multi-million dollar celebrity brand into a notorious and infamous figure with little commercial value, requiring Plaintiff to spend the last five years in damage control rather than growing and developing his business.

*Id.* ¶ 40. The TAC, however, nowhere alleges how MelTech's alleged injury was proximately caused by members subscribing to Match's dating websites. In fact, it is highly implausible that Match's allegedly false advertising could have harmed MelTech at all, because there is no alleged connection whatsoever between MelTech, which appears to own photographs of a now inactive amateur porn star and one or more pornographic websites, and Match, which owns and operates dating websites. The notion that MelTech profited less from pornography, or suffered any reputational loss, because consumers signed up for Match's dating services is not pleaded, and if it were, would be several steps beyond the bounds of plausibility, much less proximate cause.[12]

---

[12] MelTech's allegation that "Plaintiff and Match are competitors as they are both Internet companies for adults 18 and over" and derive revenue from advertising, subscriptions, and website traffic, TAC ¶ 52, stretches the concept of a "competitor" so far as to render it meaningless and is irrelevant because it still says nothing about how MelTech's alleged harm was proximately caused by Defendants.

Numerous cases decided under the Second Circuit's pre-*Lexmark* "strong categorical" or "reasonable commercial interest" tests address proximate cause and demonstrate that MelTech's allegations of harm present no causal nexus to any alleged advertising and are entirely speculative. *See, e.g., Gifford v. U.S. Green Bldg. Council*, No. 10-cv-7747, 2011 WL 4343815, at *2-4 (S.D.N.Y. Aug. 16, 2011) (no Lanham Act standing where defendant's products/services did not relate to same fields in which plaintiffs specialized and allegations of harm were too speculative, as it was "not plausible that each customer who opt[ed] for LEED certification [was] a customer lost to Plaintiffs"); *see also Conte v. Newsday, Inc.*, No. 06–CV–4859, 2013 WL 978711, at *13 (E.D.N.Y. Mar. 13, 2013) (no Lanham Act standing where plaintiff "failed to establish a reasonable basis for causation, as his reasoning 'depends on multiple levels of speculation'").[13]

Aside from the lack of causal connection between MelTech's claimed harm and Match's alleged advertising, MelTech also fails to allege any facts to support its conclusory claim that its reputation or sales were actually harmed.  While MelTech alleges that Melissa Midwest's reputation was harmed because her photographs have been associated with online romance scams, it alleges nothing to suggest that *MelTech's* reputation was harmed.  MelTech does not allege, for example, that it is in the business of selling photographs of Ms. Midwest or that sales of its photographs or visits to its website have decreased because the photographs have appeared in fake profiles on dating websites (and, if so, how), and any such claim would be implausible.[14]

---

[13] MelTech alleges (TAC ¶ 40) that "Plaintiff's photographs have been associated with 'dating scams' on the internet and in the public eye," but does not allege at all how that led to any injury to MelTech. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) ("[C]onclusions of law or unwarranted deductions of fact are not admitted.") (quotations and citation omitted).  Even if these allegations could somehow be credited, they would be intervening causes of the alleged injury.

[14] MelTech's allegation that "damage[] to Plaintiff's brands" is demonstrated by the fact that photographs of Melissa Midwest's appear on "romance scam web sites" is implausible.  *See* TAC ¶ 24 & Exh. G (noting that "[p]eople on [sic] the pictures are not associated with scammers in any way, they

Finally, MelTech also cannot demonstrate any injury that was proximately caused by the alleged Lanham Act violation for the independent reason that MelTech affirmatively alleges that the fake profiles were created by third-party "criminals."  TAC ¶ 55; *id.* ¶¶ 18, 95, 99.  *See, e.g., First Nationwide*, 27 F.3d at 769 ("When factors other than the defendant's fraud are an intervening direct cause of plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions.").

In sum, because MelTech lacks Lanham Act standing,[15] the Court should dismiss MelTech's false advertising claim.[16]

### 3. Plaintiff Fails to State a False Advertising Claim Because the TAC Does Not Identify a Single (1) Commercial Advertisement or Promotion Containing, or (2) Representation Concerning, Plaintiff's Photographs

To constitute "'commercial advertising or promotion' under the Lanham Act, a statement must be: (1) 'commercial speech,' (2) made 'for the purpose of influencing consumers to buy defendant's goods or services,' and (3) ' . . . disseminated sufficiently to the relevant purchasing public.'"  *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56, 57–58 (2d Cir. 2002)).

---

are just victims of identity theft").  The TAC does not allege how being portrayed as a victim caused any reputational harm to Melissa Midwest the person, let alone MelTech.

[15] The TAC (¶ 72) cites *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288 (D.N.H. 2008).  However, in *Friendfinder* the plaintiff was the actual person allegedly depicted in certain photographs who alleged "that she suffered injury to her reputation," and her claim arose from her right of publicity and personal identity.  *Id.* at 305-06 ("[T]he unpermitted use of a person's identity will . . . trigger false advertising concerns in addition to infringing upon the right of publicity.  In such cases, plaintiff will have valid allegations of both false advertising and infringement of the right to publicity.") (citing J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 5:19 (2d ed. 2000)).  Here, MelTech can make no such claim because it and the person known as Melissa Midwest are not one in the same – and MelTech does not and cannot own or assert her personal right of publicity.

[16] MelTech has not factually alleged how "the nature, characteristics, and quality of Plaintiff's photographs" have been misrepresented, other than as to the person Melissa Midwest's association with the profiles.  This is a false designation allegation under section 1125(a)(1)(A), for which only Melissa Midwest, the person, has standing, and which is otherwise precluded under *Dastar*.

MelTech alleges that Match violated the Lanham Act by making "false and misleading representations regarding the nature, characteristics, and quality of the Plaintiff's photographs in commercial advertising on the internet," TAC ¶ 65, but does not identify a single such advertisement containing or otherwise referring to any of Plaintiff's photographs of Melissa Midwest. Instead, MelTech attaches a purported advertisement containing an image of "porn star Raven Riley." *See* TAC ¶ 14 & Exhibit C. Plaintiff's allegation that "Plaintiff's photographs have been used on Defendants' sites for six-plus years in a similar fashion" is vague and conclusory, and not supported by any pleaded facts as to when any such photograph was allegedly used, for what purpose, in what jurisdiction, or to reach what audience. Thus, despite four opportunities, MelTech still has not identified any advertisement containing Plaintiff's photograph.

MelTech points to certain Match profile pages with Melissa Midwest's photograph that also contain advertisements for *other companies* (e.g., Verizon). *See* TAC ¶ 23 & Exhibit F. This, however, is irrelevant, because the relevant inquiry is whether the advertisements at issue were made "for the purpose of influencing consumers to buy *defendant's* goods or services." *Gmurzynska*, 355 F.3d at 210 (emphasis added).

MelTech also alleges (TAC ¶¶ 20 and 71) in conclusory terms that Match generated "fraudulent electronic correspondences on behalf of profiles," such as "winks," emails, and "daily matches," which "falsely advertised and depicted that Melissa Midwest was and is a member of Defendants' sites," thereby "constituting additional false advertising." This blunderbuss allegation does not suffice to state a Lanham Act claim for false advertising. Communications that by definition contain varying content and are made on an individualized basis are not "disseminated . . . to the relevant purchasing public" or "part of an organized campaign to penetrate the relevant market." *Fashion Boutique*, 314 F.3d at 56, 57.

Because the TAC does not identify any commercial advertisement or promotion containing any of Plaintiff's photographs, much less one containing any misrepresentation about Plaintiff's photographs, MelTech's false-advertising claim under the Lanham Act should be dismissed.

**D.      Plaintiff's RICO Claim Should Be Dismissed for Multiple Independent Reasons**

To plead a civil RICO violation, a plaintiff must allege: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).  Here, MelTech asserts violations of 18 U.S.C. §§ 1962(c) and 1962(d).

**1.      Plaintiff Fails to State a Claim under 18 U.S.C. § 1962(c)**

To state a claim under 18 U.S.C. § 1962(c), the plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (*quoting Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  Plaintiff's Section 1962(c) claim fails for at least three independent reasons.

First, in order to satisfy the "enterprise" requirement of a RICO claim, a plaintiff must "allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161-62 (2001).  A "person" is defined to include "any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).  A RICO "enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  An "association-in-fact" enterprise "must have an ascertainable structure beyond that inherent in the pattern of racketeering activity . . . ." *Boyle v. United States,* 556 U.S. 938, 946 (2009).

15

Here, MelTech alleges that the RICO "enterprise" is the "Match Segment," which is defined as a combination of three separately operating subsidiaries of Defendant IAC/InterActiveCorp ("IAC") – Defendants People Media, LLC, Match.com, LLC, and Humor Rainbow, Inc.  TAC ¶¶ 47, 86.  MelTech, however, fails to plead a RICO enterprise that is cognizable in the Second Circuit because the TAC: (1) does not allege any course of conduct on the part of the enterprise that is separate from the alleged predicate racketeering acts,[17] and, (2) does not allege how the purported enterprise in fact functioned as a unit.[18]

Second, regardless of whether the RICO enterprise has been adequately pleaded, "the person and the enterprise referred to must be distinct."  *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir. 1994).   Here, however, Plaintiff's allegation that "[f]or purposes of Civil RICO, IAC serves as the 'person' while the Match Segment serves as the 'enterprise,'" TAC ¶ 86, fails the distinctness requirement because Plaintiff alleges that IAC and the IAC subsidiaries comprising the purported enterprise acted within a single corporate structure.  TAC ¶¶ 48-50 (referring to each as a "subsidiary of IAC"); *see Discon, Inc. v NYNEX Corp.*, 93 F.3d 1055, 1062–64 (2d Cir. 1996) (finding no distinctiveness where "the individual defendants were acting within the scope of a single corporate structure, guided by a single corporate consciousness"); *Physicians Mut. Ins. Co. v. Greystone Servicing Corp.,* No. 07 Civ. 10490, 2009 WL 855648, at *7 (S.D.N.Y. Mar. 25, 2009) (holding that where corporate RICO "person" and corporate RICO

---

[17] *See First Capital Asset Mgmt. Inc. v. Satinwood, Inc.,* 385 F.3d 159, 173 (2d Cir. 2004) ("The Amended Complaint fails, however, to detail any *course* of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves — a requirement in this Circuit.").

[18] *Id.* ("Plaintiffs have failed to provide us with any solid information regarding the "hierarchy, organization, and activities" of this alleged association-in-fact enterprise, from which we could fairly conclude that its 'members functioned as a unit.'") (internal citations omitted). *Id.* at 174-75 ("conclusory 'naming of a string of entities' does not adequately allege an enterprise"; *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 474 (S.D.N.Y. 2006) (dismissing complaint based on conclusory enterprise allegations).

"enterprise" shared *inter alia* common ownership, they did not meet the distinctiveness requirement).

Third, the elements of Section 1962(c) must be established as to each individual defendant. *DeFalco,* 244 F.3d at 306 (citing *United States v. Persico,* 832 F.2d 705, 714 (2d Cir. 1987), *cert. denied,* 486 U.S. 1022 (1988) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant. . .")).  Therefore, a plaintiff must plead with particularity, setting forth separately the allegedly wrongful acts or omissions of each defendant.[19]  In addition, in order "to conduct or participate in the affairs" of a racketeering enterprise under Section 1962(c), the defendant must "participate in the operation or management of the enterprise itself."  *Reves v. Ernst & Young,* 507 U.S. 170, 177, 185 (1993).  "In [the Second] Circuit, the 'operation and management' test is an extremely rigorous test."  *U.S. Fire Ins. Co. v. United Limousine Serv.*, 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004).  "[L]iability under § 1962(c) may not be imposed on one who merely carries on or participates in an enterprise's affairs."  *Biofeedtrac Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 832 F. Supp. 585, 590 (E.D.N.Y. 1993) (quotations omitted).

Here, the TAC does not contain any non-conclusory allegations concerning IAC's (or any other defendant's) role in the purported RICO enterprise, let alone any specific allegation as to how IAC (or any other defendant) operated or managed the purported enterprise.  MelTech has clearly flunked the rigorous pleading tests for a RICO claim.

### 2.    Plaintiff Lacks Standing to Bring a RICO Claim

The RICO statute confers standing to sue only upon a "person" who is "injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).  "This requires a showing not only that the defendant's alleged RICO violation was the 'but-for' cause or the cause-in-fact of his injury, but also that the violation was the legal or proximate cause."

---

[19]*See, e.g., DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where there are multiple defendants, a complaint must identify which defendant is responsible for which act.").

*Powers v. British Vita, P.L.C.*, 57 F.3d 176, 189 (2d Cir. 1995) (citations omitted).  Thus, to state a

RICO claim, a plaintiff must allege damages that were proximately caused by the alleged

racketeering itself.  *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457-58 (2006) (dismissing

RICO claim because "[t]he cause of Ideal's asserted harms, however, is a set of actions (offering

lower prices) entirely distinct from the alleged RICO violation (defrauding the State)").  "A link

that is too remote, purely contingent, or indirect is insufficient."  *Hemi Grp., LLC v. City of New

York*, 559 U.S. 1, 8 (2010).

Here, MelTech does not allege any injury that was proximately caused by any alleged

RICO violation.  MelTech alleges (TAC ¶¶ 87-88) that Defendants committed wire fraud by

approving or posting fake dating profiles containing Melissa Midwest's photographs, and that this

somehow caused Ms. Midwest's "brand" to become "nearly worthless intellectual property."

Setting aside the fact that Plaintiff does not even attempt to allege the elements of a wire-fraud

violation, Plaintiff offers nothing to bridge the yawning gap between purportedly unauthorized

dissemination of photographs of an amateur porn star and purported diminution of the value of her

"brand."  Indeed, those conceivably deceived by any wire fraud would be the Match.com users, not

MelTech.  Accordingly, the Court should dismiss MelTech's Section 1962(c) claim.

### 3.     Plaintiff Fails to State a Claim under 18 U.S.C. § 1962(d)

Plaintiff's Section 1962(d) claim must fail because, as explained above, Plaintiff fails to

state a claim under Section 1962(c).[20]  Plaintiff's Section 1962(d) claim also fails because it does

not plead, *as to each alleged co-conspirator*: "(1) an agreement to join the conspiracy; (2) the acts

of each coconspirator in furtherance of the conspiracy; [and] (3) that the co-conspirator knowingly

---

[20] 18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  *See FD Prop. Holding, Inc. v. U.S. Traffic Corp.,* 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002) (dismissing Section 1962(d) claim "[b]ecause the RICO conspiracy claim is dependent upon the Section 1962(c) RICO claim").

participated in the same." *Fuji Photo*, 640 F. Supp. 2d at 312 (citation omitted).  Here, Plaintiff

pleads only that "the activities of Defendants jointly . . . constitute Wire Fraud."  TAC ¶ 87.  This is

plainly insufficient to support a RICO conspiracy claim, and the Court should dismiss it.[21]

**E.      Plaintiff's State Law Claims Are Barred By the Communications Decency Act**

**1.      Section 230 of the CDA**

Section 230 of the CDA provides that "[n]o provider or user of an interactive computer

service shall be treated as the publisher or speaker of any information provided by another

information content provider," 47 U.S.C. § 230(c)(1), and "[n]o cause of action may be brought

and no liability may be imposed under any State or local law that is inconsistent with [§ 230]," *id.*

§ 230(e)(3).  Section 230(c) of the CDA "immunizes internet service providers from . . . non-

intellectual property, state law claims arising from third-party content."  *Murawski v. Pataki*, 514

F. Supp. 2d 577, 591 (S.D.N.Y. 2007) (granting IAC/InterActiveCorp's motion based upon CDA).

In light of the important interests at stake,[22] "[c]ourts across the country have repeatedly

held that the CDA's grant of immunity should be construed broadly."  *Atl. Recording Corp. v.*

*Project Playlist, Inc.*, 603 F. Supp. 2d 690, 699 (S.D.N.Y. 2009) (collecting cases).  Further, courts

"aim to resolve the question of § 230 immunity at the earliest possible stage of the case because

that immunity protects websites . . . from having to fight costly and protracted legal battles."

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009).

---

[21] "[A] RICO conspiracy allegation should be more than a conclusory add-on  . . . It should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it."  *FD Prop. Holding,* 206 F. Supp. 2d at 373.

[22] The CDA's grant of immunity serves important policy goals, such as "maintain[ing] the robust nature of Internet communication" and avoiding the chilling effect on free speech that would result from imposing tort liability on service providers for material created by third parties.  *See, e.g., Zeran v. America Online, Inc.,* 129 F.3d 327, 331 (4th Cir. 1997).

2.      **Section 230 of the CDA Requires Dismissal of Plaintiff's State Law Claims**

CDA immunity applies when (1) the defendant is a "provider . . . of an interactive computer service"; (2) the allegedly harmful content was "provided by another information content provider," and not by the defendant; and (3) the plaintiff's claims seek to hold the defendant liable as a "publisher or speaker" of the allegedly harmful content.  47 U.S.C. § 230(c)(1); *Murawski*, 514 F. Supp. 2d at 591.  All three elements are present here.

a.      **Defendants Are Interactive Computer Service Providers**

The CDA defines "interactive computer service" as an "information service . . . that provides or enables computer access by multiple users to a computer server . . . ."  47 U.S.C. § 230(f)(2). There can be no dispute that Defendants' online dating services constitute "interactive computer services."  "Courts generally conclude that a website falls within this definition."  *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 473 (E.D.N.Y. 2011) (collecting cases); *accord Seldon v. Magedson*, No. 11 Civ. 6218 (PAC), 2012 WL 4475274, at *16 (S.D.N.Y. July 10, 2012) ("A website, such as ripoffreport.com, is considered to be an 'interactive computer service' that falls within the potential scope of section 230 immunity.").  Not surprisingly, federal courts have determined that online dating websites—including Match.com—are "interactive computer services." *See, e.g., Beckman v. Match.com*, No. 2:13–CV–97, 2013 WL 2355512, at *3 (D. Nev. May 29, 2013) (holding that Match.com is an interactive computer service); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1121 (9th Cir. 2003) (holding that Matchmaker.com is an interactive computer service).[23]

---

[23] Because Plaintiff seeks to hold each Defendant liable for the same conduct - postings on dating websites allegedly owned and operated by Defendants, Section 230 applies equally to each Defendant.

### b. Defendants Are Not Information Content Providers and Did Not Provide the Content at Issue

An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3).  Whether a website is an "information content provider" turns on whether the website "created or developed" the particular content alleged to have resulted in the harm at issue.  *Carafano,* 339 F.3d at 1125.  That a website provides functionality or features that enable users to post content is irrelevant to the inquiry.  *See id.*

Here, Plaintiff alleges that "criminals in foreign countries" created fake dating profiles containing its photographs and posted them on Defendants' dating websites.[24]  Thus, Defendants are not information content providers with respect to the content at issue.  *See Gibson v. Craigslist, Inc.*, No. 08-CIV-7735, 2009 WL 1704355, at *4 (S.D.N.Y. June 15, 2009) (applying CDA where complaint "acknowledges that an 'unknown individual,' not the Defendant, placed the advertisement . . . on the Craigslist website").[25]

As noted above, although MelTech now refers to purportedly "[f]ake profiles created by Match," TAC ¶¶ 7-8, the TAC sets forth no facts to support this conclusory allegation, and Plaintiff concedes that it has no evidence of any specific instance in which Match created a fake profile, let alone a fake profile containing any of Plaintiff's photographs.  Given that Plaintiff apparently is unaware of, and lacks a good-faith basis to allege the existence of, an actual fake profile created by Match, the Court should not credit these conclusory allegations, and they are not sufficient to convert

---

[24] *See, e.g.,* TAC ¶ 55; *id.* ¶ 18 (referring to "arrests of online romance gang members"); *id.* ¶ 95 ("criminals . . . have been using Plaintiffs photographs in fake profiles on their web sites").

[25] *Accord Beckman,* 2013 WL 2355512 at *4 ("[P]laintiff does not allege that Match.com created Ridley's profile or authored the communications from Ridley.  Thus, Ridley, not Match. com, was the 'information content provider' for the material provided on his user profile on Match.com's website.  That is, Match.com is not an 'information content provider' with respect to Ridley's user profile.").

Match into an information content provider under the CDA. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 443 (S.D.N.Y. 2005) ("[C]onclusory allegations or legal conclusions masquerading as factual contentions will not suffice to prevent a motion to dismiss.").

### c.   Plaintiff's Claims Treat Defendants as Publishers of Third-Party Content

The last CDA element asks whether the plaintiff's claim treats the defendant as the publisher of third-party content. "[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions such as deciding whether to publish, withdraw, postpone or alter content are barred by Section 230." *Zeran*, 129 F.3d at 330; *accord Green v. America Online*, 318 F.3d 465, 471 (3d. Cir. 2003) (AOL held entitled to Section 230 immunity as selection of material for publication is quintessentially related to a publisher's role).

Here, Plaintiff's claims for aiding and abetting fraud (Count IV), violation of the New York Civil Rights Law (Count V), conversion (Count VI), and unjust enrichment (Coount VII) all expressly seek to hold Defendants liable for publishing fake profiles created by unknown third parties. *See* TAC ¶ 99 (claim for aiding and abetting fraud based on "approving" and "hosting" fake profiles created by "third-party criminals" and "allowing them to communicate" on Defendants' websites)[26]; *id.* ¶ 104 (claim under New York Civil Rights Law based on use of "Plaintiff's photographs for false advertising and false endorsements in . . . fake profiles on Defendants' sites")[27]; *id.* ¶ 108 (conversion claim based on Match's "approving, posting, and publishing Plaintiff's photographs in . . . online dating profiles"); *id.* ¶ 113 (claim for unjust

---

[26]MelTech's assertion (TAC ¶ 94) that Defendants provided "substantial assistance" by enabling fraudsters to post fraudulent content does not change the analysis. *See, e.g., Carafano,* 339 F.3d at 1125 (use of detailed questionnaire to elicit statements insufficient to establish that website operator was an "information content provider"); *Universal Commun. Sys., Inc. v. Lycos, Inc.,* 478 F.3d 413, 420 (1st Cir. 2007) ("At best, [the] allegations establish that [the defendant's] conduct may have made it marginally easier for others to develop and disseminate misinformation. That is not enough to overcome Section 230 immunity.").

[27] *See Carafano,* 339 F.3d at 112 (dating website entitled to CDA immunity for privacy claim).

enrichment based on "unauthorized commercial use of Plaintiffs photographs" on Defendants' websites).  Accordingly, MelTech's state-law claims should be dismissed.[28]

**F.**    **Plaintiff's State Law Claims Are Preempted by the Copyright Act**

"The [U.S.] Copyright Act [] exclusively governs a claim where: (1) the particular work to which the claim is being applied falls within the type of work protected by the Copyright Act . . . and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law . . . ."  *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004); *see* 17 U.S.C. § 301.

Here, (1) the works at issue are photographs, which for "more than a century . . . have been held to be copyrightable," *Rogers v. Koons*, 960 F.3d 301, 306 (2d Cir. 1992); *see also* 17 U.S.C. § 102(a), and (2) MelTech's claims are based on its alleged rights under the Copyright Act, *e.g.*, its exclusive right to reproduce and distribute copies of its photographs (*see* 17 U.S.C. § 106(1), (3), (5)).  Accordingly, the Court should dismiss MelTech's state-law claims for aiding and abetting fraud, conversion, and unjust enrichment as preempted by the Copyright Act.   *See Briarpatch,* 373 F.3d at 306-07; *Gordon v. McGinley*, 502 F. App'x 89, 90 (2d Cir. 2012) (courts <u>must</u> dismiss state-law claims when preemption exists) (quoting *Briarpatch*, 373 F.3d at 309).[29]

**G.**    **Plaintiff Also Fails to Allege Required Elements of Its State Law Claims**

    **1.**    **Plaintiff Fails to State a Claim for Aiding and Abetting Fraud**

Under New York law, a fraud claim requires (1) a misrepresentation or omission of material

---

[28] *See, e.g., Beckman*, 2013 WL 2355512 at *6 (claims alleging Match.com's failure to implement safety measures "are actually directed at Match.com's publishing, editorial, and/or screening functions - - all of which are clearly entitled to immunity under the CDA") (citing *Zeran*, 129 F.3d at 330).

[29] *See also, e.g.,* D. NIMMER, NIMMER ON COPYRIGHT, §1.01[B][1][g] ("unjust enrichment . . . should be regarded as an 'equivalent right' and hence, pre-empted . . . .");  *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 442 (S.D.N.Y. 2011) ("unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted") (internal citations omitted).

fact; (2) which the defendant knew to be false; (3) made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused the plaintiff injury. *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001). Here, MelTech does not even allege that *it* was defrauded by anyone, let alone by Match. MelTech alleges no misrepresentation made to *it*, or upon which *it* relied. MelTech's theory apparently is that it was injured by frauds committed by offshore criminals on members of Match's dating websites. Whatever that is, it is not a fraud claim under New York law. Accordingly, the Court should dismiss the aiding and abetting claim.[30]

### 2. Plaintiff's New York Civil Rights Law Claim Fails as a Matter of Law

The private right of action under New York Civil Rights Law § 51 is only available to a "person whose name, portrait, picture or voice is used . . . ." Corporate entities such as MelTech have no right of privacy under this statute and cannot assert a claim under §§ 50-51. *Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295, 311 (N.D.N.Y. 2003). *See also Pirone v. MacMillan Inc.*, 894 F.2d 579, 585 (2d Cir. 1990) (§§ claim 50-51 may only be asserted by a living person).

Plaintiff's Civil Rights Law claim is also barred by the applicable one-year statute of limitations, because Plaintiff seeks a remedy for violations allegedly occurring "[s]ince at least 2007," TAC ¶ 4, but commenced this action on November 21, 2013. *See* CPLR 215(3).

### 3. Plaintiff's Cause of Action for Unjust Enrichment Fails as a Matter of Law

To state an unjust enrichment claim, a plaintiff must allege that: (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) it would be against equity and good conscience to permit the defendant to retain what is sought to be recovered. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011). An unjust enrichment claim "will not be supported if the

---

[30] MelTech's claim for aiding and abetting fraud also fails independently because MelTech does not allege with any specificity: (1) which defendant provided "substantial assistance" and to whom, (2) the nature of any such substantial assistance, (3) or that any such assistance proximately caused any injury to MelTech. *See* Fed. R. Civ. P. 9(b) (requiring that allegations of fraud be pleaded with particularity).

connection between the parties is too attenuated." *Id.*

Here, MelTech does not allege any relationship between it and Match, let alone a relationship pursuant to which Match was enriched at its expense. Accordingly, the Court should dismiss MelTech's unjust enrichment claim. *See id.* (dismissing claim absent "allegations that would indicate a relationship between the parties").[31]

### 4.      Plaintiff's Cause of Action for Conversion Fails as a Matter of Law

To plead conversion, a plaintiff must "show legal ownership or an immediate superior right of possession to a specific identifiable thing, and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights." *Castaldi v. 39 Winfield Assocs.*, 30 A.D.3d 458, 458 (2d Dep't 2006). Intellectual property rights (*see* TAC ¶¶ 107-08) are not "things" that are subject to conversion.

Here, MelTech does not and cannot allege that Defendants deprived MelTech of any tangible item to which it no longer has access. MelTech's conversion claim also fails because the TAC does not allege that MelTech demanded or that Match refused to deliver possession of anything.[32]

---

[31] *See also Martes* v. *USLIFE Corp.*, 927 F. Supp. 146, 149 (S.D.N.Y. 1996) (dismissing unjust enrichment claim because there "is no basis here for any suggestion that USLIFE received or possesses anything that belongs to plaintiff"); *Denenberg* v. *Rosen*, 897 N.Y.S.2d 391, 396 (1st Dep't 2010) ("Whatever benefits [defendant] may have received were too attenuated from the conduct alleged and from [its] relationships with plaintiff."); *Sperry* v. *Crompton Corp.*, 8 N.Y.3d 204, 215 (2007).

[32] *See Johnson v. Gumer*, 94 A.D.2d 955, 955 (4th Dep't 1983) ("conversion does not occur until the defendant refuses to return the property after demand . . . ."); *Hamilton Assets Corp. v. Kirshberg*, 158 N.Y.S.2d 808 (1st Dep't 1956) (dismissing claim based on lack of evidence of a demand or refusal).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion, and dismiss the TAC with prejudice.

Dated:  New York, New York
           June 12, 2014

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By:      /s/ *Daniel L. Brown*
          Daniel L. Brown
          Craig Cardon (admitted *pro hac vice*)
          Tyler E. Baker

          30 Rockefeller Plaza
          New York, NY 10112
          Telephone: (212) 634-3095
          Facsimile: (212) 655-1768

          *Attorneys for Defendants*

26