UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                    :

YULIANA AVALOS,            :

                    :

               Plaintiff,     :       13-CV-8351 (JMF)

                    :

         -v-            :     OPINION AND ORDER

                    :

IAC/INTERACTIVECORP. et al.,     :

                    :

             Defendants.    :

                    :

---------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/30/2014

JESSE M. FURMAN, United States District Judge:

      Plaintiff Meltech Inc. ("Meltech"), which owns the rights to photographs of a model

named Melissa Harrington, brings this action against IAC/Interactivecorp. ("IAC"), Match.com

LLC ("Match.com"), People Media, LLC ("People Media"), and Humor Rainbow, Inc. ("Humor

Rainbow") (collectively, "Defendants"), claiming violations of several federal and state laws

arising out of Defendants' alleged unauthorized use and publication of photographs of

Harrington in fraudulent profiles posted on Defendants' dating websites.  Defendants now move

to dismiss Meltech's Third Amended Complaint ("Complaint") pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  For the reasons that follow, Defendants' motion is

GRANTED and the Complaint is dismissed in its entirety.

## BACKGROUND

      The following facts, taken from the Complaint and the exhibits attached thereto, are

assumed to be true for the purposes of this motion.  *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131,

135 (2d Cir. 2001).

Meltech is a web design and modeling company, incorporated in Nebraska, which began operations in 2005.  (Third Am. Compl. (Docket No. 30) ("TAC") ¶¶ 2, 46, 67).  Pursuant to a legal separation agreement with Harrington (who is also known as Melissa Midwest) — a model who was named as a plaintiff in Meltech's Amended Complaint (*see* Am. Compl. (Docket No. 3) ¶ 72) but is no longer a party to this lawsuit — Meltech acquired full ownership of all existing photographs of Harrington, along with several websites associated with her, and obtained the right to use Harrington's "images, video and content without restriction for marketing, promotion or any other use." (TAC ¶ 3).

IAC is a publicly traded company incorporated in Delaware and headquartered in New York City.  (*Id.* ¶ 47).  IAC has approximately 150 subsidiary companies, several of which operate online dating websites, including People Media, a California limited liability company that operates approximately twenty-five dating websites tailored to different interest groups (*id.* ¶¶ 47-48); Match.com, a Texas limited liability company that operates the dating websites Match.com and Chemistry.com (*id.*  ¶ 49); and Humor Rainbow, a New York corporation that operates the dating website OkCupid.com.  (*Id.*  ¶ 50; *id.*, Ex. A at 24-25).  Meltech's lawsuit against Defendants stems from an unpleasant reality familiar to many who either use online dating services or watch daytime television specials concerning the same: Some online dating profiles are fake, and can be used to persuade unsuspecting victims to enter into online relationships with people who do not, in fact, exist.  (*Id.* ¶ 10-11*; id.*, Ex. M at 2, 4).

Meltech's claim is not that it was duped by such a profile, but rather that many of those fraudulent profiles use photographs of Harrington without its consent.  The proliferation of fake profiles using photographs of adult entertainment stars or models such as Harrington, Meltech alleges, benefits Defendants, as a dating website's larger and more attractive member base

entices consumers "to join and pay subscription fees who would otherwise not" and generates "inflated advertising revenue." (*Id.* ¶ 5). With that motive, Meltech alleges, Defendants have violated several federal and state laws by "developing, approving, and posting [Meltech's] photographs on their web sites in fake profiles" (*id.* ¶ 33); collecting membership fees from those who make said fraudulent profiles (*id.* ¶ 55); and — in the case of Match.com — creating fake profiles in the first instance (*id.* ¶¶ 7, 58). Those actions have caused Meltech to receive "thousands of complaints from American romance scam victims" (*id.* ¶ 15); caused Meltech's owner to be "threatened and harassed" (*id.* ¶ 16); and led to a reduction in value of Meltech's "intellectual property" itself, as its "photographs have been associated with 'dating scams' on the internet and in the public eye, turning a multi-million dollar celebrity brand into a notorious and infamous figure with little commercial value" (*id.* ¶ 40).

This lawsuit was first filed in November 21, 2013, by Yuliana Avalos. (Docket No. 1). Avalos, alleging that her image had been wrongfully used in "hundreds/thousands of fraudulent profiles" on Defendants' websites (Compl. (Docket No. 1) ¶ 37), brought suit on behalf of a proposed class of "all individuals or entities . . . whose likenesses and images as depicted in photographs . . . were approved, posted, published and disseminated by Defendants' web sites without [their] permission or consent" (*id.* ¶ 42). On January 27, 2014, Avalos's complaint was amended to substitute Harrington and Meltech as plaintiffs, with Harrington — like Avalos before her — purporting to represent all those whose photographs had been used on Defendants' websites without their consent. (Am. Compl. ¶¶ 72-73, 78). Per an Order of this Court (Docket No. 9), the parties submitted a joint letter on March 27, 2014, in anticipation of their initial pre-trial conference on March 31, 2014. (Joint Ltr. (Docket No. 17) 1). In it, Meltech indicated that it had not received Harrington's explicit consent to include her as a plaintiff in the Amended

Complaint; instead, it had included Harrington out of a "good faith belief" that its legal separation agreement with Harrington entitled it to litigate using her name.  (*Id.* at 1).  Harrington had since objected to her inclusion in the suit; thus, Meltech sought leave of Court to amend its complaint.  (*Id.* at 1-2).  After receiving such leave after the initial pre-trial conference (Docket No. 18), Meltech filed its Second Amended Complaint on April 1, 2014, naming only Meltech as a plaintiff.  (Docket No. 19).  After Defendants filed a motion to dismiss on May 2, 2014, Meltech received another opportunity to amend its complaint, and subsequently filed the operative Third Amended Complaint on May 27, 2014.  (Docket No. 30).

Defendants filed this motion to dismiss on June 12, 2014.  (Docket No. 31).  Defendants concurrently filed a request for judicial notice of documents submitted as part of attorney Tyler Baker's declaration, which all indicated that Meltech did not own any registered copyrights (Defs.' Request Judicial Notice (Docket No. 34) 2; Decl. Tyler E. Baker Supp. Defs.' Mot. To Dismiss & Request Judicial Notice (Docket No. 32) ("Baker Decl."), Exs. A-D).  In Meltech's memorandum of law in opposition to Defendants' motion, filed on July 1, 2014 (Docket No. 36), Meltech withdrew the Complaint's second and fifth causes of action (for copyright infringement and for violations of New York Civil Rights Law Sections 50-51) (Pl.'s Mem. Law Supp. Pl.'s Opp'n Defs.' Mot. To Dismiss Third Am. Compl. (Docket No. 36) ("Pl.'s Mem.") 1).  In filing the opposition, Meltech's attorney Evan Spencer also filed a declaration with various exhibits. (Decl. Attorney Evan Spencer Supp. Pl.'s Opp'n Defs.' Mot. To Dismiss (Docket No. 37) ("Spencer Decl.")).  Defendants objected to Spencer's declaration on the same day they filed their reply (Docket Nos. 40, 41), insisting that it consisted "entirely of counsel's arguments" (Objection Decl. of Pl.'s Counsel (Docket No. 41) ("Decl. Objection") 1); contained "inadmissible hearsay" (*id.* at 2); and "impermissibly" sought to "to bolster the [Complaint]" (*id.*

at 3).  In a surreply, which Spencer obtained leave of Court to file (Docket No. 43), Spencer

responded that his declaration was needed to, among other things, "refute numerous false

statements included in Defendants' motion" and "provide additional evidence of fraudulent

activity on their web sites which they deny." (Sur-Reply Attorney Evan Spencer Supp. Pl.'s

Opp'n Defs.' Mot. To Dismiss (Docket No. 44) ("Spencer Surreply") 1).

## DISCUSSION

As noted, Plaintiff has withdrawn the Complaint's second and fifth causes of action (for

copyright infringement and for violations of New York Civil Rights Law Sections 50-51).

Defendants move to dismiss the remainder of Plaintiff's claims under Rule 12(b)(6).  To survive

such a motion, a plaintiff must generally plead sufficient facts "to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  More specifically, the plaintiff must allege sufficient facts to show "more than

a sheer possibility that a defendant has acted unlawfully." *Id*.  A complaint that offers only

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not

do." *Twombly*, 550 U.S. at 555.  Further, if the plaintiff has not "nudged [his or her] claims

across the line from conceivable to plausible, [the counterclaim] must be dismissed." *Id*. at 570.[1]

---

[1]     Significantly, "[i]n adjudicating a motion to dismiss, a court may consider only the
complaint, any written instrument attached to the complaint as an exhibit, any statements or
documents incorporated in it by reference, and any document upon which the complaint heavily
relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).  Accordingly, the Court may not,
and does not, consider Spencer's declaration and the exhibits attached thereto.  Moreover, to the
extent that Spencer's declaration is not an improper effort to submit "additional evidence of
fraudulent activity" (Spencer Surreply 1), it is a thinly veiled attempt to supplement Plaintiff's
twenty-five page memorandum of law with more pages of legal argument than the Court's
Individual Rules and Practices allow absent leave of Court.  The Court will not countenance such

Applying those standards here, all of Plaintiff's remaining claims must be dismissed. The Court begins with a discussion of Plaintiff's claims under the Lanham Act, then addresses its claims under the civil Racketeer Influenced and Corrupt Organizations ("RICO") Act, and finishes with its various claims under state law.

## A.  The Lanham Act Claims

Meltech's first cause of action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  In particular, Meltech alleges that Defendants violated Sections 1125(a)(1)(A), which prohibits false endorsement or designation of origin, and 1125(a)(1)(B), which prohibits false advertising.  *See, e.g.*, *Lipton v. Nature Co.*, 71 F.3d 464, 473-74 (2d Cir. 1995); *Jackson v. Odenat*, 9 F. Supp. 3d 342, 354 (S.D.N.Y. 2014).  The Court will consider each claim in turn.

### 1.  Section 1125(a)(1)(A)

Section 1125(a)(1)(A) of the Lanham Act prohibits persons from engaging in false or misleading practices likely to "deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. § 1125(a)(1)(A).  Meltech first alleges that Match.com violated that provision by "using [Meltech's] photographs in [its] web site profiles and advertisements," thus engaging in "reverse passing or palming off" of Meltech's photographs.  (TAC ¶ 69).  A Section 1125(a)(1)(A) claim based on "reverse passing off" lies when a "producer misrepresents someone else's goods or services as his own, " *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011) (internal quotation marks omitted), which Meltech alleges Defendants did through its "unauthorized use and publication" of

---

a blatant end run around the rules.  Thus, the Court disregards all arguments presented in Spencer's declaration — but notes that none of those arguments would change the analysis or outcome in any event.

Meltech's photographs.  (Pl.'s Mem. 14 ¶ 34; *see also id.* at 10 ¶ 25).  Nevertheless, the Supreme

Court made clear in *Dastar Corp. v. Twentieth Century Fox Film Corp.* that the Lanham Act was

"not designed to protect originality or creativity."  539 U.S. 23, 37 (2003).  That is, it does *not*

"creat[e] a cause of action for, in effect, plagiarism — the use of otherwise unprotected works

and inventions without attribution," as doing so would "create a species of mutant copyright law

that limits the public's federal right to copy and to use expired copyrights."  *Id.* at 34, 36

(internal quotation marks omitted).  In attempting to plead a Lanham Act claim based on

Defendants' unauthorized use of its photographs, for which Meltech does not own copyrights

(Baker Decl., Exs. 1-4), Meltech attempts to achieve precisely what *Dastar* prohibits: an end run

around copyright law.  Accordingly, Meltech's claim on this front fails.

Meltech's Complaint could also be read to plead a claim for false endorsement under

Section 1125(a)(1)(A), on the theory that Defendants — by approving, publishing, or even

creating fake profiles with Harrington's photographs — falsely created the impression that

Harrington was a user of Defendants' dating websites and that Harrington approved of the goods

and services provided by Defendants (namely, the dating websites themselves).  (TAC ¶¶ 29, 68-

69).  It is well established that "the Lanham Act is an appropriate vehicle for the assertion of

claims of falsely implying the endorsement of a product or service" by a celebrity, *Burck v.*

*Mars, Inc.*, 571 F. Supp. 2d 446, 454 (S.D.N.Y. 2008) (internal quotation marks omitted), as a

"celebrity has a . . . commercial investment in the 'drawing power' of his or her name and face in

endorsing products and in marketing a career," *Albert Furst von Thurn und Taxis v. Karl Prince*

*von Thurn und Taxis*, No. 04-CV-6107 (DAB), 2006 WL 2289847, at *11 (S.D.N.Y. Aug. 8,

2006) (quoting *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 625-26 (S.D.N.Y. 1985)).  As a

celebrity's right of publicity is transferrable in some states (along with the commercial interests

that accompany that right), claims for false endorsement have occasionally been brought by those who purportedly own a celebrity's right of publicity rather than the celebrity him/herself. *See, e.g.*, *Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*, No. 10-CV-2333 (KMW), 2013 WL 822173, at *19 (S.D.N.Y. Mar. 6, 2013) (entertaining a false endorsement claim brought by company that purported to own Bruce Lee's right of publicity).  Here, however, Meltech does not claim to own Harrington's right of publicity.  Nor could it, assuming Meltech's separation agreement with Harrington was executed under the laws of Nebraska, as Nebraska's right of publicity is inalienable.  *See* Neb. Rev. Stat. § 20-207 ("The action for invasion of privacy created by sections 20-201 to 20-211 and 25-840.01 shall be personal to the subject of the invasion and shall in no case be assignable."); *see also* Jennifer E. Rothman, *The Inalienable Right of Publicity*, 101 Geo. L.J. 185, 192 (2012) (noting that "[s]ome states have expressly prohibited transfers of the right of publicity. In Nebraska, for example, the relevant statute explicitly bars the alienation of the right.").  As "[f]ederal courts as a general rule allow litigants to assert only their own legal rights and interests, and not the legal rights and interests of third parties," *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006), any claim Meltech seeks to make in this regard must be and is dismissed.

## 2.  Section 1125(a)(1)(B)

Meltech next asserts a claim of false adverting under Section 1125(a)(1)(B).  In order to assert a cause of action for false advertising, "a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014).  In order to establish proximate causation, a plaintiff need not show that he was in direct commercial competition with the defendant, *see id.* at 1394, but he nevertheless

must allege that he suffered "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391.[2]

Here, even assuming *arguendo* that misrepresentations on Defendants' dating websites constitute "advertising" — a premise that the Court highly doubts, but need not reach — Meltech has not adequately pleaded any harm to its commercial interests proximately caused by Defendants' alleged misrepresentations. Meltech claims that by "falsely designating that Melissa Midwest was and is a member of [its] web sites," Match.com has caused "consumer confusion for thousands if not millions of consumers, resulting in the devaluation of the intellectual property owned by [Meltech]." (TAC ¶ 69). As a result, it asserts, Meltech has lost millions of dollars in revenue in the past few years. (*Id.* ¶¶ 67, 69). The Complaint, however, provides no factual support for that conclusory allegation of harm to Meltech. In fact, if the misrepresentations that Meltech alleges in the Complaint harmed anyone, it would arguably be Defendants themselves, not Meltech (or even Harrington). (*Compare id.*, Ex. O at 1, 5 (complaints on ConsumerAffairs.com warn other consumers to "NEVER SUBSCRIBE [to Match.com]!"; to "[s]tay away from Match.com," and to "not go to [Match.com] for any reason") *with id.*, Ex. G (website ScamDigger.com instructs viewers that fraudulent photographs on dating websites, including Harrington's, are "STOLEN FROM INNOCENT THIRD

---

[2]      Defendants argue that, under *Lexmark*, Meltech "lacks standing to bring a false advertising claim." (Defs.' Mem. 10). The *Lexmark* Court made clear, however, that whether Congress has authorized an individual to sue under the Lanham Act should not be analyzed under the "prudential standing" doctrine urged by the parties before it. *See* 134 S. Ct. at 1386-88. Here, as in *Lexmark*, there is a case or controversy within the meaning of Article III, so Meltech's ability — or lack thereof — to state a claim for relief for false advertising "does not implicate the Court's jurisdiction." *Leason Ellis LLP v. Patent & Trademark Agency LLC*, No. 13-CV-2880 (VB), 2014 WL 3887194, at *4 (S.D.N.Y. July 2, 2014).

PARTIES" and that "[p]eople on the pictures are not associated with scammers in any way, they are just victims of identity theft")).

In any event, even if Meltech could establish that it was harmed, it fails to allege a plausible causal connection between that harm and Defendants' actions.  That is, Meltech has to allege not only that consumers were deceived by the fraudulent photographs of Harrington on Defendants' websites, but also that that deception — believing that Midwest was a member of Defendants' dating websites when she was not, and consequently discovering otherwise — led consumers to "withhold trade" from Meltech by, for example, visiting *its* websites less often.  *See Lexmark*, 134 S. Ct. at 1391.  Meltech does not particularly try, and certainly does not come close to, doing so plausibly.  *Cf. Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 695 (2d Cir. 1994) (affirming dismissal of false advertising claim, noting that "[t]he missing link" in the plaintiff's proof of false advertising "is evidence that [defendant's] advertising will have the effect on consumers that [plaintiff] says it will.").  Notably, courts applying the Second Circuit's pre-*Lexmark* "reasonable interest" test, *see Famous Horse Inc. v. Fifth Ave. Photo Inc.*, 624 F.3d 106, 113 (2d Cir. 2010) — an even more lenient test that required "only the bare minimum of Article III standing," *Lexmark*, 134 S. Ct. at 1393 — dismissed similarly speculative allegations of harm caused by defendants.  *See, e.g.*, *Gifford v. U.S. Green Bldg. Council*, No. 10-CV-7747 (LBS), 2011 WL 4343815, at *3 (S.D.N.Y. Aug. 16, 2011) (dismissing the plaintiffs' false advertising claim because any allegations of harm caused by the defendant's actions were "entirely speculative"); *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1125 (S.D.N.Y. 1993), *aff'd*, 32 F.3d 690 (2d Cir. 1994) (noting that the plaintiff "introduced little evidence in this case that could justify finding an injury or a causal connection to [the

defendant's] conduct.").  It follows that Meltech's claim of false advertising must be and is

dismissed.  Accordingly, all claims under the Lanham Act fail as a matter of law.

## B.  The Civil RICO Claims

Next, Meltech asserts violations of the civil RICO statute, Title 18, United States Code,

Sections 1961 *et seq.* — specifically, of Section 1962(c) and (d).  Substantially for the reasons

stated in Defendants' memorandum of law (Mem. Law Supp. Defs.' Mot. To Dismiss Third Am.

Compl. (Docket No. 33) ("Defs. Mem.") 15-19), there are any number of fatal flaws in Meltech's

claims under those subsections, but the Court need address only one.  In order to state a claim for

relief under either Section 1962(c) or (d), a plaintiff must establish both but-for causation and

proximate causation.  *See, e.g.*, *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d Cir.

2010).  As discussed with respect to Plaintiff's Lanham Act claim, Plaintiff's proximate-cause

argument does not pass the laugh test, let alone the plausibility test.  Additionally, the Complaint

does not sufficiently allege that Defendants — as opposed to "criminals in foreign countries and

domestically" (TAC ¶ 55) — were primarily responsible for any resulting harm suffered by

Meltech.  Although Meltech submits numerous examples of fraudulent profiles that use

Harrington's picture, its claim that Match.com in fact created such profiles is conclusory at best.

(*See, e.g.*, *id.* ¶ 58).  Ignoring those conclusory allegations, Meltech alleges, at most, that

Defendants approved and failed to appropriately screen out fraudulent profiles submitted by third

parties, and those profiles caused harm to Meltech's commercial interests.  (*See id.*  ¶¶ 33, 37-38,

59-60).  Such allegations fail to establish proximate cause for the purposes of a civil RICO

action, because "when factors other than the defendant's fraud are an intervening direct cause of

a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's

actions." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994).

Accordingly, Meltech's civil RICO claims must be dismissed.

## C. State-Law Claims

Finally, the Court turns to Plaintiff's state-law claims for unjust enrichment, conversion, and aiding and abetting fraud.[3]  As an initial matter, Defendants allege that those claims are preempted by the Copyright Act.  (Defs.' Mem. 23).  The Copyright Act "exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).  The works at issue here — photographs — have long been held to be copyrightable.  *See Rogers v. Koons*, 960 F.3d 301, 306 (2d Cir. 1992). Accordingly, whether Meltech's state-law claims are preempted turns on the second requirement, also known as the "general scope" requirement.  *See Briarpatch*, 373 F.3d at 305; *see also Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 850 (2d Cir. 1997).

---

[3]      When federal claims are eliminated in the early stages of litigation, as here, "courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y*, 464 F.3d 255, 262 (2d Cir. 2006).  But dismissal is not "absolutely mandatory."  *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988).  Instead, a district court may maintain jurisdiction where "the 'values of judicial economy, convenience, fairness, and comity' support the exercise."  *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Here, as discussed below, Meltech's state-law claims implicate the doctrine of preemption, which is a "factor that may sometimes favor retaining pendent jurisdiction."  *Baylis*, 843 F.2d at 665; *see also Marcus v. AT&T Corp*., 138 F.3d 46, 57 (2d Cir. 1998)*.*  Additionally, Meltech's claims hardly "turn[] on novel or unresolved questions of state law."  *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003).  Accordingly, the Court will adjudicate Meltech's state law claims, as doing so "will save future, needless litigation in state court." *Cinevert v. Varsity Bus. Co.*, No. 12-CV-1223 (RRM) (VVP), 2014 WL 4699674, at *3 (E.D.N.Y. Sept. 22, 2014).

A state-law claim falls within the "general scope" of the Copyright Act only if the state-created right "may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law." *Id.* (internal quotation marks omitted).  To do so, the claim must involve "acts of reproduction, performance, distribution or display." *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 893 (2d Cir. 2011) (internal quotation marks omitted).  Additionally, in order to ensure that only state-law claims equivalent to copyright actions are preempted, a claim subject to preemption must not require a plaintiff to prove extra elements that "change the nature of the action so that it is *qualitatively* different from a copyright infringement claim." *Id.* at 909 (internal quotation marks omitted).  Accordingly, "claims based on breaches of fiduciary duty, contractual promises of confidentiality, or trade secrets often survive preemption because the underlying right they seek to vindicate is the right to redress violations . . . different from an exclusive right protected by copyright." *Id.* at 909 (internal quotation marks omitted).  By contrast, "[i]f unauthorized publication is the gravamen of [a plaintiff's] claim, then it is clear that the right [the plaintiff] seek[s] to protect is coextensive with an exclusive right already safeguarded by the Act." *Harper & Row Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985).

Applying those principles here, Meltech's unjust enrichment claim is plainly preempted by the Copyright Act, as it is based wholly on "Defendants' unauthorized commercial use of Plaintiff's photographs," (TAC ¶ 113) — a claim that falls within the ambit of rights already protected by the Copyright Act.  *See Briarpatch Ltd.*, 373 F.3d at 306 (finding preemption of plaintiffs' unjust enrichment claim based on unauthorized use of a novel and screenplay in producing a movie).  Meltech's conversion claim is similarly based on Defendants' allegedly wrongful commercial exploitation of Meltech's photographs, and the gravamen of the claim is

plainly "unauthorized publication." *Harper & Row*, 723 F.2d at 201.  Accordingly, Meltech's

conversion claim is also preempted by the Copyright Act.  *See Flaherty v. Filardi*, No. 03-CV-

2167 (LTS) (HBP), 2007 WL 2734633, at *6 (S.D.N.Y. Sept. 19, 2007) (holding that a

conversion claim was preempted by the Copyright Act); *Archie Comic Publications, Inc. v.

DeCarlo*, 141 F. Supp. 2d 428, 432 (S.D.N.Y. 2001) (same).[4]

     By contrast, the preemption analysis for Meltech's aiding and abetting fraud claim is less

clear.  *See, e.g.*, *Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*, 476 F. Supp. 2d 291,

298 (S.D.N.Y. 2007) (noting that New York's cause of action for fraud requires "the additional

element of 'intentional deception,' which renders it qualitatively different from a claim for

copyright infringement").  The Court need not decide the issue, however, because the Complaint

fails to state a claim for aiding and abetting fraud.  To state such a claim, a plaintiff must allege

"(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the

defendant provided substantial assistance to advance the fraud's commission." *Lerner v. Fleet

Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (internal quotation marks omitted) (alteration in

---

[4]    In *Harper & Row*, 723 F.3d at 200-01, the Court suggested that the preemption analysis
for conversion may depend on the theory upon which a plaintiff claims relief, as one theory of
conversion "is a tort involving acts — possession and control of chattels — which are
qualitatively different from those proscribed by copyright law, and which therefore are not
subject to preemption."  Here, Meltech's claim for conversion is, at its core, a claim based on
Defendants' unauthorized use of Meltech's photographs "in hundreds/thousands of fake profiles
for commercial purposes" (TAC ¶ 106), not one plausibly based on Defendants' physical
possession of the same.  Therefore, Meltech's conversion claim is preempted.  *See Strauss v.
Hearst Corp.*, No. 85-CV-10017 (CSH), 1988 WL 18932, at *8 (S.D.N.Y. Feb. 19, 1988)
(finding a conversion claim to be preempted by the Copyright Act because "Plaintiff does not
contend that defendant has interfered with plaintiff's physical control of any of the photographs
that were taken by Strauss, nor does he in any other manner allege elements to a cause of action
different from those alleged in his copyright claim.").

original).  Thus, a plaintiff must establish the underlying elements of fraud, including a showing of reasonable reliance on the defendant's misrepresentations.  *See*, *e.g.*, *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 888 F. Supp. 2d 431, 445-46, *on reconsideration in part*, 888 F. Supp. 2d 478 (S.D.N.Y. 2012); *Jebran v. LaSalle Bus. Credit, LLC*, 824 N.Y.S.2d 224, 225 (App. Div., 1st Dep't 2006).  On that score alone, Meltech's claim plainly fails.  Meltech does not allege anywhere in the Complaint that it relied on any misrepresentations included in the fraudulent profiles; if anyone relied on those misrepresentations, it was Defendants' users, not Meltech.  (*See* TAC ¶¶ 90 ("While *consumers on Match's web sites* don't know where a member/subscriber is creating a profile with [Meltech's] photographs, Match does know" (emphasis added)), 57 ("the predator operating [the fraudulent profiles] race to contact *as many members* as possible and entice them to communicate off-site" (emphasis added))).  It is well established that "[t]he reliance element of fraud under New York law . . . cannot be established by showing that only a third party, and not the plaintiff, relied on the defendants' allegedly false statements."  *Barnhart v. Federated Dep't Stores, Inc.*, No. 04-CV-3668 (JGK), 2005 WL 549712, at *8 (S.D.N.Y. Mar. 8, 2005).  It follows that Meltech's aiding and abetting fraud claim must be dismissed.[5]

---

[5]      In light of the foregoing, the Court need not, and does not, reach Defendants' alternative argument that Meltech's state-law claims are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), (e)(3).  (Defs.' Mem. 19-23).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and Meltech's Complaint is DISMISSED in its entirety.  The Clerk of Court is directed to terminate Docket No. 31 and to close the case.

SO ORDERED.

Date:   October 30, 2014
        New York, New York

_____
JESSE M. FURMAN
United States District Judge